Good morning. My name is John West and I am here on behalf of the Appellant Pacificare of Arizona. I'd like to outline the four principal reasons why Pacificare of Arizona has a private right of action. First, under the plain text of the Medicare Secondary Payer Act, private right of action section found at 1395YB3A. Second, the inclusion of a Medicare secondary payer provision within the statutes governing Medicare Advantage plans in Part C, found at 1395W-22A4. And third, if necessary, deference to the agency interpretation of the statute, which has been clear and unmistakable in granting Medicare Advantage organizations the same rights as the Secretary has under traditional Medicare. And finally, the allowing Medicare Advantage organizations a private right of action will act to further the goals of both the Medicare Secondary Payer Act and also of the Medicare Advantage program. Go ahead. I was just going to say, when you cover this, what I would like you to focus on for me personally is you're asserting an express cause of action under the Medicare Secondary Payer, but where in the provision of the legislative history does the statute provide for suits against Medicare beneficiaries? And also, in order to find such a private cause of action, wouldn't we have to determine that Congress intended to allow recovery of double damages against the insured? So I can address those questions specifically. First, I think you have to understand the context in which this came, this case came before the courts. You will note that in the record, and it's a stipulated fact, that Pacificare made a demand upon the primary plan, GEICO, for this claim. And GEICO, in recognition of that claim, agreed to issue a check payable jointly to both the Paras and the agent of Pacificare of Arizona. Right. So this is essentially an interpleader. It is essentially an interpleader. Essentially what GEICO did here was say, look, we owe money to the heirs of Mr. Para for their various emotional distress and perhaps loss of consortium and the other things covered by the Arizona wrongful death statute. Arizona wrongful death statute would not entitle his heirs to seek medical expenses. Perhaps his estate could have, but it didn't. And you were entitled under the Federal statute to seek reimbursement of hospital expenses. Absolutely. And GEICO said, boy, we only have a $500,000 policy. We're interpleading the portion that's in dispute. Could they have gone to Federal court to interplead that? I suppose. Well, how? How? Well, they would have had to have. No diversity. I don't think there would have been diversity and I don't think they would have had standing. But what they agreed to do. Well, sure they would have had standing. Two people are making claims against a pot of money. But I don't know if it would have warranted Federal court jurisdiction. That's right. It wouldn't have. And so why does your claim warrant Federal court jurisdiction? Our claim, well, first of all, the case was originally filed in Federal court by the paris. The paris. Completely without any justification, as close as I can tell. But let's put that aside. Okay. Well, they filed the case. We, Pacificare, made the claim against GEICO. GEICO, it's a stipulated fact in recognition of that claim, issued a check payable jointly. Okay. We know all that. We've got that. But Judge Halligan's question, which I was – I'm still pursuing, is this. I'd understand if you had to sue GEICO to get the money that you might claim a private cause of action here. We'd still have a fight about who is entitled to the money because we have claimants on one side claiming for different things than you're claiming for. We're not dealing with a hospital lien here. We're not dealing with a statute that sets priorities. But where does the – where do the Federal statutes allow you, once the primary payer says, you're right, I've got a pot of money that you may be entitled to and that these guys may be entitled to, how does it allow you then to proceed in Federal court against that pot of money? Because we asserted in our counterclaim an entitlement to that money under 1395YB3A. We also asserted entitlement to that money under W-22A4. And also, I would like to – I'd like to – Go ahead. And also, if we turn to 42 CFR 422.108F, that regulation says that the Medicare Advantage plan exercises the same rights to recovery from primary plan entity  under the Medicare Secondary Payer Act. If an individual gets a payment that represents medical expenses, and that could happen all the time, an insurer pays – pays the medical expenses to the individual who's covered, the secretary might be able to recover them from the individual. But there hasn't been a payment to the individual here of any medical expenses. GEICO has said, here, guys, you go litigate about this pot of money. And my question is, why is that litigation a Federal matter? One, under the Medicare – the act I just described. Two is that these are Federally created rights under the Medicare Secondary Payer Act. And it stands to reason that the Federal courts are the appropriate forum for an adjudication of Medicare Advantage plan rights under the Medicare Secondary Payer Act and its rights to this particular fund that's being held by the PARA's trust account. Let me ask the question differently, Mr. West, because we're missing each other here. Does the act speak at all about priorities to this fund? Doesn't the act simply say that you may charge the primary plan in a case where you are secondary? Does the act at all sort out for us who gets this money, as opposed to the fact that just saying that you have a claim to it? Yeah. The act says that Medicare is secondary. It states that the Medicare Advantage plan shall charge, and it's the obligation of the primary plan to pay. I understand. And the primary plan is paid. Let me just – because I'm having some difficulty and I want you to be able to help me with this. Let's assume that instead of this being a wrongful death claim, the four PARA family members were in the car with Mr. PARA. And they were all injured and he was injured. He got Medicare Advantage benefits while he was in the hospital and they had millions of dollars' worth of injuries. I understand you would have a claim against the GEICO plan for the amount that you spent to care for Mr. PARA, but is there anything in the Medicare statute that tells us who gets – how the money gets split up in the end? You're not really claiming you have a lien here on the first 136, are you? We are claiming that we have a direct claim as the suborgy of Mr. PARA to those monies. I understand. But you have a direct claim and the heirs also have a claim because they say the driver of the other car caused them wrongful death damages. Does the statute tell us how we sort out that claim? For the purposes – it does. But for the purposes of this appeal, the case should be remanded to district court for further proceedings. Under the Medicare secondary payer statute, it expressly states that how that is determined and the nature of the obligation is determined by the nature of the claim and the release given in exchange for that. And in our case, if you examine the record and you look at the settlement agreement entered into by the PARAs, they have expressly released the survivorship claim. They have signed that as the personal representative of the estate. So our position is clearly there was money paid in exchange for a release, and that release included the survivorship claims, which would include the final medical expenses, and the release specifically identifies the personal representative's role in that. And that is part of the record. Why are those Federal issues? I mean, you may well be right about all this stuff, but why aren't those State law issues? Because these are Federally created rights, and if we look at the statutes which create the preemption provisions, it's clear of the intent of Congress that these Federally created rights should be litigated in the Federal courts where there can be a Federal development, a Federal common law over those rights. And if they're litigated in the State courts, you've under the ---- Well, you lose in Arizona. You lose in Arizona, right? We do not lose in Arizona. We do not lose in Arizona because, one, the release that was signed specifically released the claims of the estate, the survivorship action through which we would have the recovery. Number two, the ---- Well, but if you don't lose in Arizona, then why didn't you file in, you know, why wouldn't you file in State court? Because we are proceeding under the Medicare Secondary Payer Act. Okay. And what provision of the Act are you proceeding under? We are proceeding under specifically 1395YB3A and also ---- Okay. So let's look at 3A first. What language in 3A gives you the right to sue the paras over who gets this $136,000? There is established a private right of action. It was we have to peel it back to the claim asserted against GEICO, that we had a private right of action against GEICO, GEICO paid the money, there were competing claims. And so we ---- But specifically, in the case of a primary plan which fails to provide for primary payment, it doesn't say anything about beneficiaries. That goes back to the question Judge Callahan asked you earlier. It was for ---- this case was originally brought as a declaratory judgment action brought by the paras. The paras brought the case for an order stating that Pacific Air had no rights to those monies. Pacific Air counterclaimed, arguing it did have a right to those monies. And the only question in our mind is whether this fight ought to take place in Federal court or State court. I think the paras should have been thrown out of court when they filed their complaint in Federal court. But that's not what's in front of us anymore. The question is, is your claim against them, which is the only issue up on appeal, a Federal claim? And the statute you cite says, I can sue GEICO to make them pay. And GEICO says, you're right, here's the money. But those guys are claiming it, too, so I'm interpleading it. But in the DEC action, as if it were an interpleader, Judge, Pacific Air would be required to set up its claim to those monies, and Pacific Air has set up its claim to those monies by asserting their rights under the Medicare Secondary Payer Act. Doesn't your claim to those monies depend on the liability of the driver for the paras? The driver has already acknowledged their liability by the settlement. But that's why I'm having difficulty with your notion that your claim really arises under Federal law. What the statute allows you to do is enforce the paras' State law claim against the driver, doesn't it? And it allows us to obtain the recovery. And again, going back to the regulation, the 108F specifically, it's against the primary plan, entity, or individual. So there's no limitation. And also the Avandia court, which we've cited, the Avandia court found no limitation on the scope of 1395YB3A. But the Avandia court's not against a beneficiary. The primary is not a beneficiary. But our case is Avandia because our case, Pacific Air made the claim against the primary plan. But the facts in your case are exactly like Avandia is your position. They're procedurally different. Of course, the claim was made. The monies were paid. The monies were put into a trust. A lawsuit was filed by the paras with a declaratory judgment in Federal court that Pacific Air had no entitlement to that money. And Pacific Air's ---- Well, does the Avandia decision stand for the proposition that the statute provides for suits, private causes of action against Medicare beneficiaries? Does it stand for that proposition? Not necessarily. However, again, we're going to the context in which this case was brought. It was ---- But the con ---- I think I understand your argument, which seems to be saying by virtue of the fact that they chose a Federal court as a forum, that that somehow confers jurisdiction on the Federal court. That isn't the law. Isn't jurisdiction that ---- well, first of all, I believe that the jurisdiction would fall under the Medicare Secondary Payer Act provision in the statute I've cited. And in addition, I think that this is a case where it's been preempted by Federal law, and it's a Federally created right ---- What's been preempted by Federal law? What's the it's? The whole notion of State law is ---- So this is a complete preemption. These issues must always be litigated in Federal court. Is that your position? Our position is, based upon the plain text of 1395YB3 and as done as determined in the Avandia decision, these ---- there is jurisdiction in the Federal court to determine these claims, yes. And we ---- again, going back, in our counterclaim, we asserted that very provision to establish Pacific Air of Arizona's right to those funds as a Medicare Advantage organization. And the reason why that this is a Federal concern is that there is clear Congressional intent that Medicare Advantage organizations enjoy the same standing as the Secretary has. It's in furtherance of the goals of lowering the cost of the Medicare program. And the Medicare Advantage organizations are to have or was created so that Medicare program could take advantage of the cost savings innovations within ---- I'm having a hard time squaring the language in Sandoval with your argument. You're basically making the pitch that Justice Scalia told us that we could not consider, which is, even though it would be good policy, even though it makes great sense to the court, we are not free to create a cause of action if we do not find clear Congressional intent to do so. And the closest thing you come to telling us where Congress has acted is 1395Y3A. And I just don't read that as broadly as you do to include a claim against beneficiaries. In order to get there, we have to look at a regulation which the Supreme Court has also told us cannot establish jurisdiction where Congress has not spoken more clearly. However, let's look, first of all, in direct answer to your question. The Medicare secondary payer provision within the Part C statute, the W-22A4, specifically references and cross-references the United States' ability for enforcement. Well, it did. And thereby equates ---- Does it specifically cross-reference the ---- where does it specifically cross-reference the United States' ability? It just simply cites to the statute that says when you're primary and secondary. Is there any reference at all in that statute to the United States' ability to enforcement? Yes. But the entire provision, 1395YB2B2, makes reference to the United States. And that's within the text of W-22A4. Well, let's read that. It says, In circumstances in which payment in this subchapter is made secondary pursuant to 13YB2 of this chapter, it doesn't make any specific cross-reference to remedies or the United States' power to sue. It simply defines when payments are secondary, doesn't it? It cross-references ---- if you read the entire section and you read down, it's ---- within that section is the United States' government's ability to sue. And let me add here that our courts have long recognized the congressional delegation of authority to the agency in matters pertaining to Medicare. And here the agency has spoken not once but twice, first in the adoption of 422-108-F and also in the recent CMS memorandum dated December 5, 2011. It makes clear that the recovery rights and the way HHS and CMS is interpreting the statute to which this Court should give deference is that Medicare Advantage organizations have the same rights as the Secretary to collect against a primary plan, an entity, or an individual. Let me ask you this. If we accept your argument and find an express cause of action against the beneficiary, do we also determine that you get double damages against the insured? Does that ---- are you also entitled to that? No. In this case, the primary plan paid. It tendered the money. It tendered the money, and it was put into a trust account. So under the facts of this case, the answer would be no. So, again, so that I'm clear, your claim in this case is that you're not making a claim against the primary plan. We've made the claim. No, just to be clear, yes or no? I mean, the primary plan is paid the money, and your lawsuit is not a claim against the primary plan. Our claim is our entitlement to those funds because the parists don't hold those funds. No, I understand. But just I think the answer to my question is simple. The primary plan is not a party to your lawsuit, correct? That's correct. So your claim in your lawsuit is that there's this pot of money that the paras claim entitlement to, and you also claim entitlement to it, correct? Correct. Your claim is against the race, not against GEICO. Our claim is to we have set up in our counterclaim our entitlement to the raise based upon our rights under the Medicare Secondary Payer Act to that money. But the claim is against the money. It's not against the insurance company because they've tendered the money into the trust account. But if you were to, let's flip it to an interpleader, and I see that I'm running way over time. You're way over time, but I mean, as you can see, we are struggling. But it's our fault, so keep going. Yeah, go ahead. Well, if we were to, let's say they were to interplead the money. They did. Well, in essence, they didn't file a lawsuit, but they, the parties to an interpleader would be required to respond and establish their entitlement to those funds. And what we are doing in our counterclaim and in this lawsuit, Pacificare, as an MAO, is setting up and establishing its entitlement to those funds based upon the Medicare Secondary Payer Act. So while it's not directly a claim against the beneficiaries, if you were to equate this to an interpleader action, that's what the parties would do. Why are we entitled to those monies? Why is Pacificare having those? But the claim is direct, I don't know if this is the correct terminology. The claim is directed against the competing demand of the beneficiaries that the $136,000 go directly to them and not to your client. So that, the only dispute here is between the PARAs and Pacificare. It's not between Pacificare and GEICO. Well, but Pacificare isn't establishing any type of claim against the, I mean, the way that this is set up in the counterclaim, though, is both parties established why they believe they're entitled to those monies. And some court's going to have to resolve that. Our question is, why is it a Federal court? And I guess that's where we're at. I think we've framed the issue. Why don't we hear from the PARAs? I'll give you a couple of minutes. Thank you. All right. Good morning, Your Honors. Good morning. My name is Bill Bacon. I represent the PARA family in this claim. The Pacificare's reimbursement claim against the PARA family is litigation that should properly be conducted in State court. Well, why did you file it in Federal court, then? Because of the Pacific, the Medicare Advantage plan is, has some Federal interest. And so I was asking the court under. What was your Federal claim? You represented the PARAs. You filed a claim in Federal court. You said it arose under 1331. What was the claim that you had that arose under 1331? Just a claim for a declaratory judgment that they don't have the right. Isn't that just wrong? Isn't that, doesn't the Motley case. It may be wrong. I guess part of what the motivation is that we filed in State court. We would have been removed to Federal court and ended up there anyway, Your Honor. But. Do you agree that, that the issue in this case is who's entitled to this 136? Yes. Do you, how would an Arizona court resolve that issue? In other words. Well, they, they would have to determine Pacificare's claim for those medical expenses versus the PARA's claim for the wrongful death benefits. Well, I mean, there's no doubt that Pacificare has a claim under the Federal Act for those medical expenses, is there? They have a, they have a claim for the, well, no, I don't, I'm not necessarily agreeing with that. Wait, why not? I'm sorry? Why not? Pacificare spent 136. Because Pacificare only has a claim under the, under their, under their contract and their rights to secondary payments made for goods and, that have been, that the primary plan is responsible for, for the goods and services provided to a beneficiary. In this case, the determination still has to be made whether GEICO, in the claims against it, had a responsibility to pay those medical expenses for the decedent, Mr. PARA. Because you're. In, in, in light of the conflicting wrongful death benefits that the family is making. So. No, no, but I'm just, before you go on to Judge Callahan's question, I'm not, I'm now confused. You don't contest that they spent $136,000 on Mr. PARA's care. Do I contest that, Your Honor? Yeah. Oh, no. Okay. And you don't contest that under the Federal statute, they have a right to charge the primary plan in this case. No, they only have a right to charge the primary plan. For the amount they spent. If it failed to make the payments that they were responsible to pay. Right. And, and the primary plan being a responsible primary plan and saying I don't want to subject myself to, to a bad faith lawsuit by my, by my insured said, you're right, you got us dead to rights. And so does, so does the PARA family. It's more than the amount of the policy that we owe. PARA family, you take the amount that nobody's fighting about. The other $136,000, we will, in effect, interplead. We won't start a court action. We'll just write a joint check and hand it to the PARA's lawyers. That happened, right? That's what happened. Okay. So now you're fighting about who gets that $136,000. Yes. Okay. How would an Arizona court resolve that dispute? How would it what, Your Honor? I'm sorry. How would an Arizona court go about resolving that dispute? Well, it is the evidence from the PARA family to determine what the relationship was with the parents, I'm sorry, with her husband, the children with their parents, determine the value of that. I assume, and I, we're not there yet, but I assume they would also consider the overall value of the case, the overall pot of money, the claim that Pacific Air is making, and try to determine a fair distribution of the funds. Mr. Biggin, isn't the answer, an Arizona court would look to the federal law, and it would look to the terms of the health care contract in order to resolve who gets the $136,000? It'd look to the terms of federal law to determine whether the primary plan had an obligation to pay those in light of the conflicting wrongful death benefits. Yeah, but that's where you're losing me. It surely had an obligation to pay them. The question is who. No, it didn't. But they claim, they see that's, federal law says so. It doesn't necessarily have an obligation to pay them. If it has an obligation to pay someone else, then that claim is greater than the pot of money available. So how does, again, the question I asked that Judge Solomon tried to follow up on, how does an Arizona court resolve that? It's got this pot of $136,000 that two entities are laying claim for, two, the Parra Heirs and Pacific Air. What law does an Arizona court use to resolve that dispute? It's going to use Arizona tort law and determine what the value of the claim is and determine in light of that whether Pacific, whether Geico had an obligation to pay medical expenses. Okay. Somebody else try. I'm not sure. Because of the statute in Arizona, is this a different lawsuit in Arizona than, say, it would be in California? I'm not familiar with California law, Your Honor. But in Arizona, they do have a unique statute where the statutory beneficiaries can make a claim solely for their loss of consortium and not for any medical expenses. And I don't know if it's the same in California. I think there are some states where the medical expenses are part of the underlying claim and are paid as part of it. Am I correct in reading the record? There has been no probate established in Arizona Superior Court over this estate? That's correct, Your Honor. So there is no personal representative or executor appointed to bring any claim that the estate might have? Correct. And Geico, as the auto insurer, had a $500,000 policy, which apparently it tendered in order to resolve whatever claims the Parra family had against the driver of the vehicle. Yes. Right? But reserving $136,000 of that, in effect, so that you could fight it out with Pacificare. Right, a joint check to both of us. And do I also understand that under Arizona's anti-subrogation statute,  that that claim would be not cognizable in Arizona court? Well, that would be our claim. I think that Pacificare takes a different view. I understand that, but there is this statutory provision that says we don't, that these subrogation claims are against public policy in Arizona. Pacificare's claim is that statutory provision, it's not really what the statute says, it's the judicial gloss on the statute, I suppose more accurately. But assume it's the statute, it's Pacificare's claim is that that provision of Arizona law, whether it's judicially based or statutorily based, is preempted by the Medicare statutes, which say that notwithstanding any law to the contrary, they may charge the primary provider. That's their position, right? Yes. And that position hasn't been litigated. It hasn't. That's a position of, that's a position that says Arizona law on this issue is preempted. Can they get into Federal court by arguing that Arizona law is preempted? No, I think the State court can handle preemption issues. Well, I know it can handle them. The question is, is that a Federal question? I think the question is whether the Federal interest, including as established in the preemption, is so great that they trump the State law as to torts. And this is a case where the cases have determined that a Federal common law, well let me back up a little bit, what Pacificare seems to be suggesting in this idea of a Federal common law is that the Federal courts should start developing their own Federal common law of torts rather than accepting the State court law, which is what decides the, any of these reimbursement issues. That's the trigger point of any claim that any of these Medicare Advantage plans have. I don't understand why, I don't understand Pacificare to be asserting any tort-like claims. Pacificare says, look, we're entitled to charge the hospital expenses as long as the driver of the other car was liable. Nobody doubts the driver of the other car was liable. We have a claim for 136. You say you have a claim for some amount under the State wrongful death statute. It's not a tort law issue. It's a, it's sort of a, it's a question of who gets, how do we divide up this pot of money? That's, that's not really a tort law issue. But it is a tort law claim in determining the damages because the Federal statute says they're only liable if under Federal tort law, the primary claim, the claim is liable. Okay, good. Now you're circling back to the question I was trying to ask at the beginning. You need, under your view, the way this pot gets divided is you establish what your client's damages are. Pacificare's claim is liquidated. How do you establish what your client's damages are? And what kind of action? GEICO's not going to defend it. That's why they tendered the money. No, no, and I wouldn't expect them to. I think that we have to, it would be, well, I guess we'd have to start in to pleader action in court or the Pacificare would have to file their claim against the PARs and state courts saying they're withholding money that they're entitled to. And the court resolves it by hearing the evidence from all the parties. Well, because that's, I'm still having a problem with that. And I must admit it's a problem that comes from my prior life as an Arizona state court judge. I'm trying to figure out what the Arizona court's supposed to do in that action. Is it supposed to just say, take the 136, Pacificare? Is it supposed to say, PARs, prove your damages in an action where nobody is litigating against you? You're surely not asking Pacificare to defend the wrongful death action and claim that you don't have lots of damages. So how does the Arizona court go about resolving this dispute? Well, I think Pacificare has to argue that their claim is demonstrably that Geico, Pacificare has to show that Geico had a demonstrative responsibility to pay the medical expenses to the decedent that is greater than the right of a PARs to collect their wrongful death. And does that argument, doesn't that argument depend on interpretation of Federal law rather than State law? But I think the Federal law is that it has to be a demonstrative responsibility which requires State law. That's, under State law, the demonstrative responsibility, that's how the demonstrative responsibility is determined. So that responsibility to pay must arise before Pacificare has the right to any additional payment. They plainly have, and that's what I'm, that's where, that's where you're losing me. I'm not sure it creates a private cause of action, but the Medicare statute rather clearly says, the Medicare Advantage statute rather clearly says that in circumstances where the secretary would be the secondary coverage under, under Medicare, the MAO is also secondary coverage under the Medicare Advantage Act, and they may charge the primary plan, in this case, and we all agree GEICO is the primary plan, that amount of money. But the statute I'm referring to is applicable to the secretary as well. The secretary doesn't have a right to secondary payments until it's a demonstrative responsibility. But that, see, that's what I'm, so you think that GEICO has got to go, do you think that Pacificare has got to go to court and try its case against the driver, is that what you're saying? They have to, yes, they have to, I'm not saying the driver's there, but they have to prove that the driver would have been responsible to pay those medical expenses versus the responsibility. But what GEICO said is, look, we don't care to litigate that issue. We're perfectly happy to tender the money. We don't want to fight about the driver's responsibility. So now you're saying they've got to bring a personal injury action against the driver? I'm not saying that, I agree that GEICO's out of it, but I am saying that despite their absence, GEICO still has, I'm sorry, Pacificare still has to show that that pot of money is due to them because the primary plan had a demonstrative responsibility. Okay, so, but I thought it was stipulated in this case that the primary plan was that the accident was the fault of the second driver, yes? Well, actually, I think that it's a standard release. It says, no, we're not acknowledging any responsibility. I am not, I've read the release recently, but I can't tell you for sure, but I'm pretty sure that it has a standard language. So Pacificare goes to the driver's insurance company and says, we think your driver caused this accident and caused us to spend $136,000. And the driver's insurance company, GEICO, says, we're not going to defend that lawsuit. What we're going to do is tender a check for the 136. Now, so happens the PARAs are also making a claim for that same 136. So God bless you, you guys go off and fight about it. Are you saying that Pacificare now has to still go back and establish that the second driver was the cause of the accident? No, no, I don't think we're claiming- That's what you just told me, that's what I'm- Well, I'm focusing more on damages. The responsibility, not because he's liable, but the responsibility of, based on that liability, what are the damages that the secondary, that the primary plan- I thought there was no dispute in this case that it was $136,000 that they spent on his medical care. But the question is, the primary plan only has X amount of money. Yes. Right, so- So are we arguing priorities here? Isn't that what you're really saying? Yes. Okay, so how does an Arizona court determine priorities? It's going to have two claims, one of which has an undetermined value, and one that has a determined value. And the court is going to have to come up with some proposal, and I don't think there's any set law. But some, either we're going to agree to it, or the court is going to impose on us some sort of plan based on how you best apportion the larger claim and the smaller claim. Let me try this. GEICO is going to have to invoke the regulations under the Medicare statute to show that it has an entitlement to reimbursement for the $136,000. Then you're going to come in and say, well, that may very well be, but I represent a class of tort claimants who are entitled to the entire amount of money for loss of consortium. And at that point, the- You didn't mean GEICO, you meant Pacific Care. Pacific Care. And at that point, the Arizona court is going to have to reach the preemption question in deciding priorities and determine whether or not, in essence, Pacific Care gets its $136,000 first out of the $500,000 ahead of the PARF. Isn't that the way it's going to play out? I don't think the preemption preempts. It may preempt law with respect to Medicare plans. It does not preempt all of Arizona tort law because the tort law is the basis for determining what is owed in the first place by the primary plan. So you're saying that the preemption only applies to whether Pacific Care even has a right of subrogation or repayment, if they're different? Say that again, Your Honor. Your argument would be that the preemption issue is limited to whether or not Pacific Care even has a right to go against the money for reimbursement, either under a theory that it is subrogated to the rights of the decedent to whom it paid medical expenses or that somehow it has a right under federal law, the regulations and the statute, to reimbursement. What I'm saying is the preemption may have an effect on the anti-subrogation statute, which would defeat, in your eyes, Pacific Care's claim entirely. Right, but I don't think the preemption preempts Arizona's underlying tort law in determining what their rights are, what the value of the PARA's wrongful death claim is. Well, let's assume you can prove 500,000. That still doesn't answer the priority question. So is this a reason that the district court should have kept this exercise supplemental jurisdiction? No, I think this district court was correct in saying that interpreting the settlement agreement is really a matter of State law. Well, but I'm wondering if going back, if then they're going to claim the federal, that there's issues and preemption issues that then the State court's going to say, well, no, this needs to go back to federal court. Well, they may argue that, but I think the State court is perfectly capable of handling those preemption things. I don't think it makes it a federal court action by simply saying there are some federal interests in preemption in a State court proceeding. The court, the State court can. Can you defeat Pacific Air's Medicare advantage claim simply by the way you phrased the settlement agreement? Is that your contention? No. I don't think you can. I mean, by Mr. PARA could not go into court, and I'm not suggesting he could go into court and say, look, I have a $500,000 claim for pain and suffering, so I'm not going to take anything for my medical expenses. And that's how we're going to work out the settlement, to monkey around with their possible claim. No matter what, no matter how you frame the settlement agreement, Geico said, as to this 136, I don't know whether Pacific Air gets it or you get it, and so I'm just putting it aside. So I don't think the settlement agreement can possibly characterize that 136 in a way that Pacific Air doesn't get a shot at it, can you? No. No. I guess I agree with that. But I still think the settlement agreement is settling two things. It is their claim and our claim in putting the pot of money out there, and the court ‑‑ State court has to determine how that money is to be divided, but it is a State court proceeding, Your Honor. Okay. One more question. I know you've gone over time, but Mr. West, we've kept Mr. West up here, too. What if we would have happened here if Geico had said we're not paying anybody and Pacific Air sued them for the money? Would that be a suit that could proceed in Federal court? I don't think so, because you still have to determine ‑‑ Well, isn't that exactly the case? I don't think that private right of action, such as it is, requires, allows Pacific Air to sue Geico, even putting aside this beneficiary issue. I think ‑‑ Isn't that exactly what the statute says? It may sue a provider or secondary plan who refuses to pay? Consistent with the prior section of the statute that says once there is a demonstrator responsibility to pay, and that would require State court law to determine. So you're saying that they first have to bring a suit in State court to establish liability, and then ‑‑ only then can they sue? Somebody has to establish liability, yes. I don't think that the State court ‑‑ I don't think that the State court, the Federal court, unless the court wants to establish a Federal ‑‑ But isn't that Avenida? That's exactly what the Third Circuit case is about. The plan says these bad drug companies gave our beneficiaries bad drugs, and they would have been entitled to sue them to get their hospital expenses, so we're going  Isn't that exactly what the Third Circuit said? Yes, but I think the court wrote that in the context of the payments to the Humana beneficiaries had already been made and determined through ‑‑ But that's exactly what would have happened here. Why isn't that the poster child for a 1395Y3A lawsuit? Well, it may be, but it doesn't include our case, Your Honor. Well, but my question is, assuming Avenida is right, this would be exactly the same kind of lawsuit that I posited. Pacificare would say, bad second driver, you should have paid the medical expenses because you caused the problem, just as in Avenida. Humana said bad drug companies, you caused the problem. We're suing you. The driver might have denied liability. He might have admitted it. The drug companies might have denied liability. They might have admitted it. But under Avenida, that suit would proceed in Federal court. Assuming that to be true, and I think it is, then why shouldn't this suit proceed in Federal court and you can intervene and make your claims? Assuming they didn't make the payments, Your Honor? Yeah. And so is this any really different than that, I guess is my question. Well, it's tremendously different in terms of the fact that it's a primary payer plan has paid, and the primary plan is not a defendant in this case. So that private cause of action simply doesn't apply to the facts of our case, Your Honor. Plain and simple. Okay. All right. Thank you, Your Honor. I think we have your position. Thank you. Mr. West, I know you went way over, but I'll give you a minute on rebuttal if you would like. Thank you, Your Honor. I'll attempt to be very brief and to the point. First of all, on the question of jurisdiction, if you go back and look at the original complaint, it was brought as a Federal question case in which the PARAs argued that Pacificare had no rights under the Medicare Secondary Payer Act to the money. So it was originally brought in Federal court as a Federal question. But as Judge Hurwitz suggested, it appeared to me in looking at the record that the claim for reimbursement of medical expenses. Is that right? Yes. Yes, Your Honor. That was the intent. However, if you review Medicare cases, cases involving traditional Medicare, it's well established that the parties can't structure a settlement like that to avoid payment of a lien. And I want to go back to this demonstrative evidence of liability. It says right in the statute, 1395YB2, that shall reimburse if demonstrated that such primary plan had responsibility as demonstrated by a payment conditioned upon the recipient's compromise, waiver, release of payment for items or services included against a primary plan. And so the fact that they entered into this settlement is conclusive. And the parties, nor traditional Medicare or Medicare Advantage organizations need not go back into state court and litigate responsibility. And as we said, the fact that this particular settlement released the claims of the estate, I think it's clear that what is going on here is they're trying to structure a settlement. One, two, maybe three more points. One, I think that the appellee's responses to your question show the need why these cases must be litigated in a Federal forum to have a uniform application of the preemption arguments. And it's not unlike ERISA, although I understand the body of law on ERISA and complete preemption is more well-developed, but if the individual states can adopt different rulings on what is preempted and what is not preempted, that is going to interfere with the congressional intent of the Medicare Secondary Payer Act. Next, you raised the question about whether an estate had been opened in state court. There is a Medicare regulation or there's an excerpt from the Medicare Secondary Payer Manual, Chapter 1 at 50.5.4.1. Upon death, the estate of the beneficiary comes into existence by the operation of law. And that is to avoid situations where an estate isn't open to avoid these types of liens. You know, at bottom, thank you for your questions on this very interesting issue. We believe that it's the overall congressional intent that Medicare Advantage organizations have the same rights in the Medicare Secondary Payer Act as traditional Medicare. And the way this case is postured and the way this case is set up, it's appropriate that Pacific Air be allowed to collect those monies from the race. And if not, if there's questions, it should be remanded back to state court with instructions consistent with the private right of action under the Medicare Secondary Payer Act. Thank you. Thank you both for a very interesting argument. We'll puzzle our way through it and get you an answer as soon as we can. Case is submitted for decision. We'll take a ten-minute recess and then hear argument in the last two cases. All rise.
judges: Tallman, Callahan, Hurwitz